UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID MEYER,<br><br>    Plaintiff,<br><br>v.<br><br>KRISTA WARD and CALHOUN ASSET MANAGEMENT LLC,<br><br>    Defendants. | No. 13 C 3303<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

This case arises from an alleged violation of the federal securities laws, the sale of unsuitable securities, violation of the antifraud provisions of the Illinois Securities Act, breach of contract, common law fraud, and breach of fiduciary duty. (Dkt. 24 at 1). Before this Court is Defendants' motion for summary judgment. (Dkt. 100). This Court has jurisdiction pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78aa; 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367. The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

## II. BACKGROUND FACTS

Defendant Calhoun Asset Management LLC (Calhoun) was an Illinois limited liability company registered with the Securities and Exchange Commission as an investment adviser from August 31, 2007, until April 22, 2010. (Am. Compl., Dkt. 24, ¶ 5). Calhoun was the investment adviser to several offshore funds including the Calhoun Market Neutral Fund (Calhoun Fund), a Cayman Islands company. (*Id.*). Defendant Krista Ward was the sole member, owner, and only full time employee of Calhoun at all relevant times. (*Id.* ¶ 6). Plaintiff David Meyer is the trustee of his Individual Retirement Account; Centennial Bank originally held the funds owned by Plaintiff's IRA. (Stmt. of Facts ¶¶ 16–17).[1] On February 26, 2007, Plaintiff instructed Centennial Bank to purchase 134,825 shares in the Calhoun Fund for

---

[1] The Court cites to Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Dkt. 105-1, "Stmt. of Facts"), and Defendants' Response to Plaintiff's Statement of Additional Facts (Dkt. 108, "Stmt. of Add. Facts") for undisputed facts.

$134,825.06. (*Id.* ¶ 18). On June 27, 2007, Plaintiff instructed Centennial Bank to purchase an additional 75,000 shares in the Calhoun Fund for $75,000 for a total investment of $209,825.06. (*Id.* ¶ 19).

It is undisputed that Ward provided a Due Diligence Questionnaire (DDQ) to Plaintiff. (Stmt. of Facts ¶ 17). Plaintiff testified that the DDQ improperly reflected that Defendant Ward had a ten-year history of successful investing and growth of assets dating back to 1997; Plaintiff relied on the information contained in the DDQ and on Ward's representations of her professional investment track record when deciding to invest in the Calhoun Fund. (*Id.* ¶¶ 25–27).[2] Plaintiff disputes these allegations. (*Id.*). It is undisputed that Defendant Ward filed a personal bankruptcy petition in 2002. (Stmt. of Add. Facts ¶ 5). It is also undisputed that Plaintiff was not advised, prior to investing with Defendants, that Ward had filed a personal bankruptcy action. (*Id.* ¶ 7).

In terms of damages from the misrepresentations, it is undisputed that Plaintiff has no evidence that Ward's alleged misrepresentations about her past performance or assets under her management caused his losses. (Stmt. of Facts ¶ 39). Plaintiff has since transferred his IRA funds to Millennium Trust and has received $142,213.33, plus $2,110.91, of his funds back. (*Id.* ¶¶ 20–21). As of September 10,

---

[2] Plaintiff alleges Ward made the following specific material misrepresentations: (1) she employed an outside company to perform due diligence on the Calhoun Fund; (2) her funds had outperformed the market and had never lost money since their inception in 1998; (3) her investment results had been audited annually; (4) her funds significantly outperformed the international hedge fund index; (5) her investment company had a committee that monitored and analyzed market conditions and the Calhoun Fund's investment portfolio. (Am. Compl. ¶ 24). Ward admits to making these statements but denies that they are false. (Answer, Dkt. 103, ¶ 24).

2015, approximately 72% of Plaintiff's funds have been returned. (*Id.* ¶ 23). Further, the S&P 500 index lost approximately 40% from the high point in 2008 to the low point in 2009. (*Id.* ¶ 48). Plaintiff's account suffered losses less than 40% from the high point in 2008 to the low point in 2009. (*Id.* ¶ 49).

On February 14, 2014, Plaintiff filed an eight-count amended complaint. (Dkt. 24). Count one seeks damages suffered by Plaintiff through the purchase of unregistered securities from Defendants (Stmt. of Facts ¶ 6); count two seeks damages suffered by Plaintiff through Defendants' violation of the anti-fraud provisions of Section 10(b)(5) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (*id.* ¶ 7); count three alleges violations of the anti-fraud provisions of the Illinois Securities Law of 1953 (*id.* ¶ 8); count five alleges common law fraud through material misstatements of fact and omissions of material facts (*id.* ¶ 9); count seven seeks rescission due to Defendants' lack of registration as investment advisors and the unregistered nature of the securities sold to Plaintiff (*id.* ¶ 10); and count eight alleges unjust enrichment (*id.* ¶ 11). On June 18, 2014, the Court dismissed counts four (breach of fiduciary duty) and six (breach of contract) and ordered Defendants to answer the remaining six counts of the amended complaint by July 9, 2014. (Dkt. 38). On November 5, 2015, Defendants filed an Answer and Affirmative Defenses to the Amended Complaint contemporaneously with the instant motion for summary judgment. (Dkt. 100–102).[3]

---

[3] Plaintiff asks this Court to strike Defendants' Answer and Affirmative Defenses as untimely and enter a default so that Plaintiff may seek a default judgment. (Dkt. 105 at 2). Plaintiff's request is denied. *See Mommaerts v. Hartford Life & Accident Ins. Co.*, 472 F.3d

## III. DISCUSSION

### A. Sales of Unregistered Securities (Counts I and VII)

Plaintiff alleges that the shares in the Calhoun Fund were not properly registered under the United States securities law. Count I alleges a violation of Section 12(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a)(1), resulting from the sale of unregistered securities. (Dkt. 24, ¶ 43). Plaintiff asserts that each of the securities sold to him were not registered or exempt from registration pursuant to Section 5 of the Securities Act, 15 U.S.C. § 77e. (*Id.* ¶¶ 43–45). The related Count VII asserts Plaintiff is entitled to rescission because Defendants were not properly licensed to sell securities and the Calhoun Fund was not properly registered as a security or exempt from registration. (*Id.* ¶ 91); *see* 15 U.S.C. § 77*l*(a) (The remedy for selling unregistered securities is "the consideration paid for such security with interest thereon, less the amount of any income received thereon.").

While the Securities Act of 1933 generally prohibits the sale of an unregistered security, 15 U.S.C. § 77e, it creates an exemption for "transactions by an issuer not involving any public offering," *id.* § 77d(a)(2); *see Marks v. CDW Computer Centers, Inc.*, 901 F. Supp. 1302, 1311 (N.D. Ill. 1995) ("The 1933 Act's registration requirements are to ensure that investors have adequate information upon which to base their investment decisions. Federal securities laws exempt from registration requirements certain private placements by the issuer and other 'downstream inves-

---

967, 968 (7th Cir. 2007) (a district court's decision to tolerate a defendant's harmless delay in answering a complaint cannot be an abuse of discretion).

tors.'") (citations omitted). The Supreme Court has determined that this private placement exemption applies in "[a]n offering to those who are shown to be able to fend for themselves." *SEC v. Ralston Purina Co.*, 346 U.S. 119, 125 (1953). Further, the party asserting the private placement exemption bears the burden of proof on the issue. *Id.* at 126.

The Calhoun Fund is a Cayman Island Exempted Limited Company. (Dkt. 101, Ex. 1). Defendants contend that the offering memorandum of the Calhoun Fund states that it is exempt from registration. (*Id.* at 3). While that is accurate, this statement is insufficient to establish the private placement exemption. Instead, "courts have relied on four factors in determining whether an offering is a private placement: (1) the number of offerees and their relationship to the issuer; (2) the number of units offered; (3) the size of the offering; and (4) the manner of the offering." *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 833 (N.D. Ill. 2008); *accord Feldman v. Concord Equity Partners, LLC*, 2010 WL 1993831, at *3 (S.D.N.Y. May 19, 2010). Defendants have failed to offer any evidence on these factors.[4]

---

[4] Whether a security is entitled to the private placement exemption is generally a question for the fact finder to determine. *See, e.g.*, *Johnston v. Bumba*, 764 F. Supp. 1263, 1274 (N.D. Ill. 1991), *aff'd*, 983 F.2d 1072 (7th Cir. 1992) ("Ultimately, the question whether an offering is public or private is a question of fact which must be resolved in light of the particular circumstances."); *Mary S. Krech Trust v. Lakes Apartments*, 642 F.2d 98, 101 (5th Cir. 1981) ("whether an offering is public or private is a question of fact which must be resolved in the light of the particular circumstances"); *Markel Am. Ins. Co. v. Verbeek*, No. 14 CV 0143, 2015 WL 5511242, at *17 (W.D. Tex. Sept. 17, 2015) ("Whether a private-placement transaction is exempt from registration under the Securities Act is a fact-sensitive inquiry.").

Defendants also argue that the securities sold to Plaintiff were exempt from registration because they were issued by a foreign private entity. (Dkt. 101 at 3–4). Securities registered by a "foreign private issuer" are exempt from the registration requirements of the United States securities laws. 17 C.F.R. § 240.3a12-3. However, the term "foreign private issuer" does not include a "foreign issuer" where "[t]he majority of the executive officers or directors are United States citizens or residents." *Id.* § 240.3b-4(c)(2)(i).

According to the offering memorandum of the Calhoun Fund, which is attached to the complaint and to the summary judgment motion, the sole directors of the Fund are Krista Ward and Dennis Heskel, both of whom are United States residents. (Dkt. 101, Ex. 1 at x, 1). Further, the offering memorandum states that Ward and Heskel have "complete authority over the operations and management of the Fund." (*Id.* at 1).

Defendants have not provided undisputed evidence that the Fund is exempt from United States registration requirements. Defendants' motion for summary judgment on Counts I and VII is denied.

## B. Fraud Allegations (Counts II, III and V)

Plaintiff alleges violations under the provisions of Section 10(b)(5) of the Securities Exchange Act of 1934, violations of the antifraud provisions in section 12(G) of the Illinois Securities Law of 1953 (815 ILCS 5/12), and Illinois common law fraud.

### *1. Section 10b-5 of the Securities Exchange Act of 1934 (Count II)*

The Securities Exchange Act of 1934 makes it unlawful for any person:

> To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 prohibits the making of "any untrue statement of material fact or to omit to state a material fact necessary" in connection with the sale of securities. 17 C.F.R. § 240.10b-5. Implied by this statute and the implementing regulation is a private cause of action, which closely resembles a common law fraud action. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). Under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, a plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).

Plaintiff argues that based on Defendants' misrepresentations and omissions, a jury reasonably could find that Defendants committed securities fraud. Defendants counter that Plaintiff must prove not only that Ward made material misrepresentations, but that Plaintiff's damages *were caused by* Defendants' misrepresentations—as opposed to the "catastrophic financial collapse of 2008." (Dkt. 107 at 4, 8–9). Asserting that no jury reasonably could find that the alleged misrepresentations and omissions caused Plaintiff's losses, Defendants believe they are entitled to summary judgment on Count II.

Loss causation is a required element of a Rule 10b-5 action and is similar to the proximate cause element in a common law fraud action. *See Dura*, 544 U.S. at 343–44. "If the plaintiff cannot prove 'loss causation'—that is, the fact that the defendant's actions had something to do with the drop in value—then the claim must fail." *Ray v. Citigroup Glob. Markets, Inc.*, 482 F.3d 991, 994–95 (7th Cir. 2007); *see also Bastian v. Petren Resources Corp.*, 892 F.2d 680, 682 (7th Cir. 1990) (a plaintiff must "allege 'loss causation'—that is, that if the facts had been as represented by the defendants the value of the limited partnerships would not have declined"). "[I]t is not sufficient for an investor to allege only that it would not have invested but for the fraud. Such an assertion alleges transaction causation, but it does not allege loss causation. Rather, it is also necessary to allege that, 'but for the circumstances that the fraud concealed, the investment . . . would not have lost its value.'" *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648–49 (7th Cir. 1997) (quoting *Bastian*, 892 F.2d at 683). So an investor plaintiff needs to prove that a defendant's misrepresentations caused the investment (transaction causation) and the loss in value of the plaintiff's investment (loss causation).

Defendants rely on *Bastian* and assert that Plaintiff has not presented any facts to establish that an alleged misrepresentation or omission caused his losses. In *Bastion*, the plaintiffs were investors in oil and gas limited partnerships who sued the promoters of the partnerships after their investments lost money. 892 F.2d at 682. The Seventh Circuit agreed that the case had properly been dismissed because the plaintiffs failed to allege "*why* the investment was wiped out." *Id*. at 684 (emphasis

in original). The court noted that gas and oil prices steadily declined during the time period in question, suggesting that the plaintiffs' loss was caused not by the defendants' misrepresentations but by independent market forces, commenting that "[i]f the plaintiffs would have lost their investment regardless of the fraud, any award of damages would be a windfall." *Id*. at 684–85.

The Seventh Circuit has repeatedly reaffirmed *Bastian*'s holding that a plaintiff may not recover for securities fraud without offering evidence that his or her losses are attributable to the defendant's fraud and not market forces. In *Ray*, the plaintiffs asserted that the defendants misrepresented the investment risks and "[h]ad plaintiffs been told the truth about the risk they were incurring, . . . they would have sold the shares they had and refrained from purchasing any more shares." 482 F.3d at 993. In affirming summary judgment, the court agreed with the district court that the investors did not present enough evidence "to show that the loss in value of [the] shares was proximately caused by the defendants' alleged misrepresentations. *Id*. at 994 (citing *Dura*, 544 U.S. at 343).

In this case, Plaintiff has offered no evidence from which a jury reasonably could find that he would have lost less money had Defendants not misrepresented their past performance experience, properly defined "assets under advisement," and disclosed Ward's personal bankruptcy from 2002. To the contrary, it is undisputed that Plaintiff has no evidence as to how the Defendants' misrepresentations regarding past performance and assets under advisement caused his losses. (Stmt. of Facts ¶ 39). Even assuming the alleged misrepresentations were in fact misrepresenta-

tions and were material, Plaintiff's admission means he cannot prove an element of his case. Plaintiff does not attempt to respond to Defendants' *Bastian* argument or address the loss causation element of a Rule 10b-5 action. Rather, Plaintiff reiterates that but for the misrepresentations, he would not have invested with Defendants. Plaintiff has presented no evidence, either through expert opinion or otherwise,[5] that a jury reasonably could find the Calhoun Fund's poor performance is attributable in some way to the misrepresentations or omission.

---

[5] The Seventh Circuit has identified several ways in which a plaintiff might prove loss causation. The first is the "materialization of risk" standard, which requires "the plaintiff to prove that 'it was the very facts about which the defendant lied which caused its injuries.'" *Ray*, 482 F.3d at 995 (quoting *Caremark*, 113 F.3d at 648). The second approach is the "fraud-on-the-market" scenario, which the Supreme Court discussed in *Dura. Id.* Finally, loss causation might be proved "if a broker falsely assures the plaintiff that a particular investment is 'risk-free.'" *Id.*

While the loss causation element must still be proven with privately offered corporate securities that are not publicly traded, courts have recognized that a comparison of market stock price has less relevance. *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1053 (9th Cir. 2011) ("With a privately held company, a comparison of market stock price to establish loss causation has less relevance because market forces will less directly affect the sales prices of shares of a privately held company."); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 944 n.1 (9th Cir. 2005) (distinguishing *Dura* in closely held companies); *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 434 & n. 11 (3d Cir. 2007) (noting *Dura* has less application in a privately held corporation). "In privately held companies, plaintiffs more commonly prove loss by showing that a misrepresentation or omission caused him or her to engage in a transaction and that the revelation of the truth is directly related to the economic loss alleged." *WPP*, 655 F.3d at 1053; *see Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 920 (6th Cir. 2007) ("Brown has adduced evidence sufficient to withstand summary judgment that he was induced to invest in Earthboard as a result of Vaughn's reckless misrepresentations, and that the revelation of the truth about the purported VANS merger proximately caused his economic loss.").

The Court finds that Plaintiff has not introduced enough evidence on the loss causation element to create a genuine issue of material fact, and Defendants' motion for summary judgment on Count II is granted.[6]

### 2. *Illinois Common Law Fraud (Count V)*

Illinois common law fraud requires "(1) a false representation of material facts as opposed to opinion; (2) made by one who knew or believed the representation to be untrue; (3) made to a party who had a right to rely on the representation and, in fact, did so; (4) made for the purpose of inducing the other party to act, or to refrain from acting; and (5) that led to injury to the person who relied on it." *McCarthy v. PaineWebber, Inc.*, 618 F. Supp. 933, 941 (N.D. Ill. 1985) (citing *Trautman v. Knights of Columbus*, 121 Ill. App. 3d 911, 914 (1984)). Both transaction causation and loss causation are elements of fraud under Illinois law. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 844 (7th Cir. 2007) (finding the plaintiff had not set forth any facts showing that the losses it suffered were proximately linked to the defendant's alleged misstatements); *see Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 60–61 (1994) ("We find Illinois law to be similar to the analysis used by these Federal courts which require both transaction causation and loss causation in order to recover for misrepresentation in securities cases. Thus, plaintiffs here must prove what the Federal courts have termed loss causation prior to any recovery of damages."). For the reasons noted above, Plaintiff has

---

[6] Defendants also assert that the scienter requirement is not met. Because the loss causation element is dispositive of this claim, the Court will not address scienter.

not presented evidence of loss causation, and Defendants' motion for summary judgment as to Count V is granted.

### *3. Illinois Securities Law of 1953 (Count III)*

The Illinois Securities Law of 1953 (ISL) makes it illegal "[t]o obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 815 ILCS 5/12(G). "Remedies under [the ISL] include rescission and awards of damages." *In re Liquidation of Sec. Cas. Co.*, 127 Ill. 2d 434, 450 (1989). In order to succeed on an ISL claim, a plaintiff must show at a minimum that the defendants "(1) made a misstatement or omission, (2) of material fact, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied." *Elipas v. Jedynak*, No. 07 C 3026, 2010 WL 1286795, at *6 (N.D. Ill. Mar. 26, 2010) (citing *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 455 (2004)). Unlike the federal securities act, the ISL does not require loss causation or scienter: "The elements of a claim under § 12(G) of the Illinois Securities Act mirror the elements of a Rule 10b-5 claim, with two important differences. First, the plaintiff is not required to prove scienter. Second, the plaintiff is not required to prove loss causation." *Elipas v. Jedynak*, No. 07 C 3026, 2010 WL 1611024, at *5 (N.D. Ill. Apr. 20, 2010) (citations omitted).

In support of their motion for summary judgment, Defendants assert that Plaintiff: (1) has no evidence that Defendants *knowingly* made false statements; and (2)

has no evidence that any statements made by Defendants caused him to suffer any damages. (Dkt. 101 at 2). But neither scienter nor loss causation are elements under the ISL. In *Foster v. Alex*, 213 Ill. App. 3d 1001, 1005 (1991), the court noted that 815 ILCS 5/12(F)–(G) are modeled on Section 17(a)(2)–(3) of the Federal Securities Act of 1933. But because those federal provisions do not require scienter, the *Foster* court held that paragraphs 12(F)–(G) of the Illinois Act do not require scienter. In *Lucas v. Downtown Greenville Investors Ltd. Partnership*, 284 Ill. App. 3d 37 (1996), the court held that the complainant seeking recovery for securities fraud under the ISL was not required to show "loss causation," even though loss causation was a requirement under the similar federal provision:

> Sections 12(F), (G), and (I) contain no statutory requirement that the plaintiffs prove that [defendant's] conduct caused the decline in value of their investment and their corresponding financial loss. Nor is this court aware of any Illinois case which has required a plaintiff to prove "loss causation" under the Act or which has interpreted the Act to be analogous to an action for common-law fraud or tort. Lacking any express statutory language or other authority which requires that the plaintiffs prove "loss causation," we decline to impose such a requirement.

*Id.* at 52; *accord Elipas v. Jedynak*, No. 07 C 3026, 2011 WL 5301782, at *5 (N.D. Ill. Nov. 3, 2011); *Nat'l Credit Union Admin. Bd. v. RBS Sec. Inc.*, 112 F. Supp. 3d 61, 66–67 (S.D.N.Y. 2015) (applying Illinois Securities Law); *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 C 6705, 2014 WL 1673351, at *4 (S.D.N.Y. Apr. 28, 2014) (same).

Here, Plaintiff seeks damages caused by Defendants' misrepresentations regarding past performance and "assets under advisement" (Stmt. of Facts ¶ 26) and Ward's omission in failing to disclose her 2002 personal bankruptcy (Stmt. of Add.

Facts ¶¶ 5–7). Plaintiff presents evidence that Defendants exaggerated the growth of assets under their management for the ten years leading up to the investments at issue, exaggerated their professional experience in investment advising, and failed to disclose Ward's personal bankruptcy. (Dkt. 105 at 5). Defendants do not argue in their motion that there is a question of fact as to whether these statements were relied upon by Plaintiff. Defendants do dispute whether the statements are misrepresentations. The parties also dispute whether Ward's omission that she had filed personal bankruptcy in 2002 is a material omission. Defendants assert that a five-year-old bankruptcy is not a material fact, and Ward testified that she did not believe she had an ethical duty to disclose her personal bankruptcy to potential investors of the Calhoun Fund. (Def. Tr. 232:4–20). These are questions of fact better left to the jury to decide.

Whether a statement or omission is material is a "fact-specific" inquiry, and "close cases should not be resolved by summary judgment." *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 517 (7th Cir. 1989); *see also Lucas*, 284 Ill. App. 3d at 45. ("Materiality is a mixed question of law and fact which is ordinarily left for the jury to determine; therefore, summary judgment is only proper in instances where the alleged misrepresentations or omissions are so obviously unimportant that reasonable minds could not differ as to the question of their materiality."). Defendants' motion for summary judgment as to Count III is denied.

## C. Unjust Enrichment (Count VIII)

Under Illinois law, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (citation omitted). "[T]he doctrine of unjust enrichment is based upon an implied contract of law and is not available where the relationship between the parties is governed by contract." *Orsi v. Picklin*, 2012 IL App (1st) 11-0680-U, ¶ 50. While an unjust enrichment claim may be pursued as an independent cause of action, where the claim "rests on the same improper conduct alleged in another claim, . . . unjust enrichment will stand or fall with the related claim." *Cleary*, 656 F.3d at 517; *accord Krug v. Am. Family Mut. Ins. Co.*, No. 16 C 4532, 2016 WL 2866142, at *3 (N.D. Ill. May 17, 2016). Defendants argue that because "Plaintiff cannot sustain a claim of fraud against Defendants, he cannot sustain a claim for unjust enrichment." (Dkt. 101 at 9) (citing *Cleary*, 656 F.3d at 517). However, since the Court is denying the summary judgment motion on Count III, the unjust enrichment claim remains viable. Defendants' motion for summary judgment as to Count VIII is denied.

## IV. CONCLUSION

Defendants' motion for summary judgment [100] is granted in part and denied in part. Defendants' motion is granted as to Counts II and V and denied as to Counts I, III, VII, and VIII.

E N T E R:

Dated: September 27, 2016

*[signature: Mary M Rowland]*

MARY M. ROWLAND
United States Magistrate Judge